UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NORTHWELL HEALTH, INC.,

                        Plaintiff,

          v.

GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., CAREFIRST BLUECHOICE, INC., CAREFIRST OF MARYLAND, INC., and CFA, LLC,

                        Defendants.

**MEMORANDUM AND ORDER**
2:23-cv-01268 (LDH) (ARL)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Northwell Health, Inc. ("Plaintiff") brings the instant action against Group Hospitalization and Medical Services, Inc., CareFirst BlueChoice, Inc., CareFirst of Maryland, Inc., and CFA, LLC (collectively, "Defendants") for damages arising from Defendants' failure to ensure payment for healthcare services rendered by Plaintiff for patients insured under Defendants' healthcare insurance plans. Defendants move pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss the amended complaint in its entirety.

## BACKGROUND[1]

Plaintiff is a healthcare provider that operates hospitals and health care facilities within New York. (Am. Compl. ¶ 1.) Defendants are Washington, D.C. and Maryland insurance corporations that serve the Washington, D.C., Maryland, and Virginia area. (*Id.* ¶ 2.) Defendants are members of the Blue Cross and Blue Shield Association ("BCBSA"), a national

---

[1] The following facts are taken from the Amended Complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

association of thirty-four independent, locally-operated Blue Cross Blue Shield companies. (*Id.* ¶¶ 8–9.) Each BCBSA member must enter a Member License Agreement with the BCBSA, that requires, *inter alia*, that they participate in the BlueCard Program. (*Id.* ¶¶ 11, 13.) The BlueCard Program allows patients insured by a BCBSA member in one state to receive coverage for healthcare rendered by an in-network provider of a BCBSA member in another state. (*Id.* ¶ 14.)

Under the BlueCard Program, the BlueCard plan that provides insurance coverage to a patient outside of the plan's exclusive geographical area is called the "Home Plan." The BlueCard plan inside the geographical area where the patient is treated is called the "Host Plan." (*Id.* ¶ 24.) After treatment, healthcare providers like Plaintiff submit a claim to the BlueCard plan in the Host Plan. (*Id.* ¶ 28.) The Host Plan then submits that claim to the Home Plan for review before the Home Plan makes a final claim determination. (*Id.* ¶ 29–30.) After a determination is made, the Home Plan pays the Host Plan any amount it determines is due to the healthcare provider and the Host Plan pays the healthcare provider. (*Id.* ¶ 31–32.)

Healthcare providers are linked to their local BCBSA members through in-network participating Provider Agreements between the provider and the BCBSA member operating exclusively in the geographical area where the provider is located. (*Id.* ¶ 16.) Plaintiff has a Provider Agreement with Empire Blue Cross and Blue Shield ("Empire"), the BCBSA member serving the New York area where Plaintiff's healthcare facilities are located. (*Id.* ¶¶ 10, 21.) The Provider Agreement requires Plaintiff to provide healthcare services to patients who are "subscribers of other Blue Cross and/or Blue Shield Plans or their affiliates or subsidiaries" at the "rates described in the Provider Agreement." (*Id.* ¶ 21.) The Provider Agreement further provides that "all Payers . . . shall be entitled to access the services of [Plaintiff] Providers that participate in the Empire network." (*Id.*) "Payers" include "any plans affiliated with the

2

[BCBSA] or their subsidiaries or affiliates." (*Id.* ¶ 21.) Furthermore, the Provider Agreement states that "the access any non-Empire BlueCard Plan has to [Plaintiff's] providers" is "subject to all of the provisions of this [Provider] Agreement [which] apply to services rendered to [patients]" including that "[p]ayers are bound by the applicable rates" of payment for services rendered. (*Id.* ¶ 22.) The Payers are "legally responsible for payment of Covered Services under the terms of the applicable benefit plan" including "BlueCard Plans with respect to any such BlueCard Plans' fully insured business." (*Id.*) The Provider Agreement also includes a forum selection clause requiring adjudication in a New York court of all claims arising under the Provider Agreement. (*Id.* ¶ 39.)

Plaintiff treated 205 patients who presented insurance cards identifying Defendants as the out-of-state BlueCard Plans responsible for payment of the claims for healthcare services provided to those patients. (*Id.* ¶ 26-27.) Of the 205 claims at issue, 181 claims are for services rendered to insureds who reside in New York. (*Id.* ¶ 46.) Plaintiff timely submitted to Empire separate billed statements for the healthcare it provided to the patients, which totaled $7,497,926.67. (*Id.* ¶ 28.) Empire submitted those billing statements to Defendants, who made claim determinations and transmitted a claim payment disposition with an explanation of payment to Empire. (*Id.* ¶ 31–32.) Plaintiff timely appealed the Defendants' determinations of Plaintiff's appeals with respect to each patient, but Defendants either denied or did not determine those claims within the time period set forth in the Provider Agreement. (*Id.* ¶ 36–37.) After adjusting the charges consistent with the rates set forth in the Provider Agreement and subtracting the payments received, Plaintiff alleges that Defendants still owe at least $2,776,719.02 for healthcare it provided. (*Id.* ¶ 38.)

3

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted). Moreover, "Rule 12(b)(6) does not give the district court authority to consider matters outside the pleadings[.]" *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991). And it is "generally improper for the court to consider factual averments contained in affidavits on a Rule 12(b)(6) motion." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (quoting *Fonte v. Bd. Of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)).

## DISCUSSION[2]

I.  **Breach of Contract Claim**

"Under New York law, it is well established that—with few exceptions—a breach of contract claim cannot be maintained against a party who is not a signatory to the underlying agreement, and not in privity with a contracting party." *Reza v. Khatun*, No. 09-CV-233, 2017 WL 11700559, at *4 (E.D.N.Y. Dec. 22, 2017).  Plaintiff does not allege that Defendants are parties or signatories to the Provider Agreement.  Instead, Plaintiff alleges that it may maintain a breach of contract claim against Defendants because, according to Plaintiff, they are in contractual privity with Defendants vis-à-vis "links" or interlocking relationships arising from Defendants' participation as a BCBSA member in the BlueCard Program.  (Am. Compl. ¶ 51.)  More pointedly, Plaintiff advances three theories to support its contention that Defendants are bound by the Provider Agreement: (1) Empire acted as Defendants' agent, (2) Plaintiff and Defendants were in functional privity, and (3) Defendants manifested their intent to be bound by the Provider Agreement by assuming the BlueCard.  (Pl.'s Mem. of L. in Opp'n ("Pl.'s Opp'n") at 4–8, ECF No. 25.)  None persuade the Court.

---

[2] Typically, a court must first address Defendants' motion to dismiss for lack of personal jurisdiction before it addresses the substantive merits of the action.  *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) (noting that logic compels "initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim").  However, because the personal jurisdiction inquiry in this case relies on the same allegations that inform Defendants' Rule 12(b)(6) motion, the Court will address that motion first.  *See, e.g.*, *Jin v. EBI, Inc.*, No. 05 CV 4201 NGG, 2006 WL 3335102, at *2 (E.D.N.Y. Oct. 17, 2006) ("This court shall first address to what extent each of Plaintiff's causes of action state a claim upon which relief can be granted under 12(b)(6). The Court shall then assess whether the surviving claim is subject to dismissal under 12(b)(1), (2), (4), and (5).").

A.  **Agency**

Plaintiff rests its agency theory almost entirely on a guidance document prepared by the Internal Revenue Service ("IRS") that describes the relationships between BCBSA members in the BlueCard program. *See* 2013 IRS NSAR 3701F, 2013 WL 10257206 (Sept. 13, 2013). According to that guidance, the IRS found that BCBSA members make benefit payments "on behalf of" one another pursuant to licensee agreements between them. *Id.* at *8. Seizing on this language, Plaintiff argues that the relationship described by the IRS is "synonymous with a principal-agent relationship[.]" (Pl.'s Opp'n at 5.) Not so. As Plaintiff is undoubtedly aware, the IRS prepared the guidance in connection with its assessment of whether transactions by a Host Plan should be properly included in the calculation of the Host Plan's special tax deduction pursuant to 26 U.S.C. § 833(b). 2013 IRS, 2013 WL 10257206, at 3–4. In other words, the guidance resolved a question of federal tax law. Plainly, the guidance does not speak to whether an agency relationship exists between the insurance companies that are part of the BlueCard program, let alone one between Empire and Defendants. Simply put the document is of no help to Plaintiff. Having disposed of the IRS guidance, the question becomes whether there are any allegations in the Amended Complaint that might support Plaintiff's agency theory. There are none.

"Under New York law, an agency relationship 'results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act.'" *Steinbeck*, 400 F. App'x at 575 (quoting *New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 122 (2d Cir. 2001)). These sorts of relationships may be created through either actual or apparent authority. Actual authority "is created by direct manifestations from the principal to the agent, and the extent of the agent's actual authority is

6

interpreted in the light of all circumstances attending these manifestations, including the customs of business, the subject matter, any formal agreement between the parties, and the facts of which both parties are aware." *Peltz v. SHB Commodities*, Inc., 115 F.3d 1082, 1088 (2d Cir. 1997). "When we inquire into an agent's actual authority, we focus on the interactions between the purported principal and its agent, not on what an injured third-party believed to be the scope of the agent's authority." *Nebraskaland, Inc. v. Sunoco, Inc. (R & M)*, No. 10 CV 1091 RJD CLP, 2013 WL 5656143, at *7 (E.D.N.Y. Oct. 11, 2013).  Yet, Plaintiff fails to identify a single allegation concerning any interaction between Defendants and Empire that might allow an inference that Empire had the actual authority to act on Defendants behalf.

      Plaintiff's attempts to plead apparent authority fares no better.  Apparent authority focuses on the words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Hallock v. State of New York*, 64 N.Y.2d 224, 231 (1984).  A third-party may not rely solely on the conduct or representations of the apparent agent, however—"the principal must by its own conduct cloak the agent with the appearance of authority that the agent does not in fact possess." *See, e.g.*, *Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 551 (1997).  Thus, "[a]pparent authority will only be found where words or conduct of the principal—not the agent—are communicated to a third party, which give rise to a reasonable belief and appearance that the agent possesses authority to enter into the specific transaction at issue . . . an 'agent cannot by his own acts imbue himself with the apparent authority' to act for a principal." *Edinburg Volunteer Fire Co., Inc. v. Danko Emergency Equipment Co.*, 55 A.D.3d 1108, 1110, (N.Y. App. Div. 2008).

7

Absent from the complaint in this case, however, is a single allegation concerning Defendants' conduct as it relates to Plaintiff that could allow the reasonable inference that Defendants cloaked Empire with the authority to bind them.  In fact, Plaintiff seems to struggle to identify any allegation that might support their agency theory.  Instead, Plaintiff presses the Court to find an agency relationship based upon the conclusory assertion that Plaintiff "credibly alleges Defendants are bound by the BlueCard terms because *Empire, as Defendants' agent*, []facilitated Defendants' claim processing, . . . made payments to [Plaintiff], . . . and []negotiated and included the BlueCard terms to the P[rovider] A[greement] at the direction, and with the authorization, of Defendants." (Pl.'s Opp'n. at 5–6.)  Of course, the Court cannot – as Plaintiff has suggested – simply assume the agency relationship into existence.  Rather, the Court must confirm that the elements of such a relationship have been pleaded.  They have not.  Tellingly, Plaintiff fails to even reference the pleading requirements in their submission to the Court.  Absent a legal basis to find an agency relationship, the Court will treat the parties as the Plaintiff rightly characterized them in the Amended Complaint -- "independent . . . locally-operated Blue Cross Blue Shield companies". (*See* Am. Compl. ¶ 9.)   To do otherwise would impermissibly bind Defendants and every independently operated BCBSA member insurance company to the terms of the Provider Agreement whether they agreed to be bound to it or not. *See Northwell Health, Inc. v. Blue Cross & Blue Shield of Massachusetts, Inc.*, No. 2:23-CV-00977, 2024 WL 3637964, at *8 (E.D.N.Y. Aug. 2, 2024) (rejecting the claim that Empire and another BCBSA member's mutual participation in the BlueCard program evinces an agency relationship between the two independent companies).

B.  **Functional Privity**

As an alternative to its agency theory, Plaintiff seeks to hold Defendants liable for breach of the Provider Agreement under the doctrine of functional privity. Pursuant thereto, a non-party to an agreement may be held liable for an alleged breach when the non-party's relationship with the contracting party is so close as to approach that of privity." *Reza*, 2017 WL 11700559, at *5. In support of its theory of functional privity, Plaintiff maintains that "[t]he P[rovider] A[greement] states Defendants' BlueCard Plans are (i) 'parties,' (ii) 'entitled to access the services of [Northwell] Providers that participate in the Empire network'; (iii) obligated and bound as 'Payers' to pay Northwell at 'the applicable rates and all other applicable terms of [the P[rovider] A[greement]]', and (iv) as 'Payers' legally responsible to pay for Covered Services." (*See* Pl.'s Opp'n at 6.) These provisions according to Plaintiff, "manifest Empire's intention to bind Defendants to the BlueCard terms in the PA." (*Id.*) And, Plaintiff therefore "reasonably understood Defendants were so bound. (*Id.*) Where to begin.

Plaintiff clearly misapprehends the doctrine of functional privity. Relying on *Kahuna Group, Inc. v. Scarono Boat Bldg., Inc.*, Plaintiff seems to suggest that all that is necessary to find functional privity is Plaintiff's reasonable belief that the Defendants, as third parties to the Provider Agreement, intended to be bound. (*See* Pl.'s Opp'n at 6 (citing 984 F.Supp. 109 (N.D.N.Y. 1997)).) But that's not at all what the case says. Likewise, the case does not support that Empire's "intention" that Defendants be bound to the Provider Agreement – without more would be sufficient to find functional privity between Defendants and Plaintiff. Instead, as Defendants note, in *Kahuna*, the court concluded only that on the record before it, there was a question of fact as to functional privity because, among other things, the non-signatory defendant was potentially a joint venturer with the signatory Defendant. *See* Defs.' Reply Mem. of L. in

9

Further Supp. Mot. to Dismiss ("Defs.' Reply") at 8–9, ECF No. 26. Nothing of the sort is alleged here.

In truth, rather than help Plaintiff's claim of functional privity, *Kahuna* only highlights its deficiencies. That is, in *Kahuna*, the court set out in painstaking detail the interactions that the nonparty defendant had with the plaintiff that might support a finding of functional privity, the existence of which is critical to a claim of functional privity. Indeed, in at least one unpublished opinion, the Second Circuit concluded that under New York's functional privity test[3] "'there must be some allegation of 'linking conduct' by the [professional] that is, 'any word or action on the part of the [professional] directed to plaintiffs,' so as to 'link' the [professional] to the non-client.'" *Stapleton v. Barrett Crane Design & Engineering*, 725 Fed.Appx. 28, 31 (2d Cir. 2013). However, Plaintiff does not allege that it ever dealt directly with Defendants. Plaintiff's allegations that Defendants "repeatedly" accepted contractual benefits of the Provider Agreement to include access to in-network services and rates and "numerous" determinations on Plaintiff's claims do not alter the Court's conclusion. (Pl.'s Opp'n. at 7.) Absent an allegation that Plaintiff ever dealt directly with Defendants, Plaintiff's theory of functional privity is implausible. *See, e.g.*, *Everlast World's Boxing Headquarters Corp. v. Trident Brands Inc.*, No. 19-CV-503 (JMF), 2020 WL 917058, at *4 (S.D.N.Y. Feb. 26, 2020) (finding no functional privity where plaintiff pled "no allegation that [plaintiff] and [defendant] dealt with each other directly, let

---

[3] In total, the New York functional privity test requires: (1) an awareness by the statement-maker that the statement will be used for a particular purpose; (2) reliance by a known party in furtherance of that purpose; and (3) conduct by the statement-maker linking the statement to the relying party and showing an understanding of that reliance. *See, e.g.*, *Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 483 (2000).

alone had direct dealings that evince [defendant]'s understanding that [plaintiff] was relying on [defendant] for royalty payments.").

    C.    **Intent to be Bound**

A non-signatory to a contract may be held liable for breach of contract if they manifested an intent to be bound by the contract or assumed obligations under the contract. *Horsehead Indus., Inc. v. Metallgesellschaft AG*, 657 N.Y.S.2d 632, 633 (1997). Whether an entity manifests an intent to be bound by assuming contractual obligations "is based on the totality of [that entity's] expressed words and deeds." *Id.* An allegation that a defendant assumed the obligations of a contract will survive a motion to dismiss where that defendant "played a considerable role in the management and performance of the [c]ontract" and "paid for [p]laintiff's services" as provided for in the contract, such that the defendant "assumed the role of a party to the [c]ontract . . . suggest[ing] that the parties were in privity." *Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. All., Inc.*, No. 05-CV-7776, 2007 WL 1701813, at *6 (S.D.N.Y. June 12, 2007).

Plaintiff's argument that Defendants manifested its intent to be bound by the Provider Agreement's terms is essentially the same as its functional privity argument: Defendants accepted the benefits and obligations of the Provider Agreement. (Pl.'s Opp'n at 8.) True, parties may be bound to contractual terms "through conduct of the parties recognizing the contract." *Apex Oil Co. v. Vanguard Oil & Serv. Co.*, 760 F.2d 417, 422 (2d Cir. 1985). A party can be said to have intended to be bound when it "micro-managed" the performance of the contract, acknowledged that it was the party in interest to the contract, and paid for the services negotiated. *See Impulse Mktg. Grp., Inc.*, 2007 WL 1701813, at *19. Although Plaintiff alleges that Defendants agreed to pay some claims related to Plaintiff's services, wholly absent from the

11

Amended Complaint are any allegations that Defendants managed let alone "micro-managed" Empire's performance under the Provider Agreement or that Defendant ever acknowledged that it was the real party in interest to the Provider Agreement.  (Am. Compl. ¶¶ 31–32.)  Without such allegations, it is implausible that Defendants intended to be bound by the Provider Agreement.

*     *     *

Because Plaintiff does not plausibly allege that Defendants were either parties to the Provider Agreement or a viable theory to bind Defendants to that agreement as non-signatories, Plaintiff does not state a claim for breach of contract.

## II.     Third-Party Beneficiary Claim

A party asserting rights as a third-party beneficiary must allege: "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006).  Against this backdrop, dismissal of a third-party-beneficiary claim is appropriate where, among other things, the contract rules out any intent to benefit the claimant." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005).  Defendants maintain that such is the case here.  (*See* Defs.' Mem. of L. in Further Supp. Mot. to Dismiss ("Defs.' Mem.") at 13–14, ECF No. 24.)  The Court agrees.

In support of Plaintiff's third-party beneficiary claim, Plaintiff directs the Court to licensee agreements between Defendants and other BCBSA members.  These agreements state that Defendants, as BCBSA members, "shall effectively and efficiently participate in" the

12

BlueCard program "for the purposes of providing portability of membership between [members] and ease of claims processing for customers receiving benefits outside of the [member's] Service Area" and "take such action as required to ensure its financial performance in" the BlueCard program. (*Id.* ¶¶ 12–13.) While these allegations support the inference of a valid contract between Defendants and BCBSA, the language in the contract "will not support the inference that the parties intended to confer a benefit on" Plaintiff. *Subaru Distributors Corp.*, 425 F.3d at 124. The licensee agreements as alleged in the Amended Complaint do not explicitly mention Plaintiff nor do they obligate Defendants to reimburse Plaintiff for services rendered at Plaintiff's desired rates or evince an intent to provide Plaintiff some other benefit. It is true that a third party need not be specifically mentioned in the contract before third-party beneficiary status is found. *David Peyser Sportswear, Inc. v. Quality Payroll Sys., Inc.*, No. 06-cv-5742 (JS) (AKT), 2007 WL 9711176, at *5 (E.D.N.Y. Sept. 30, 2007). But, New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement." *Id.* Plaintiff fails to identify even one contractual provision that evinces the requisite intent. *See Dixon v. Ford Motor Co.*, No. 14- CV6135, 2015 WL 6437612, *6 (E.D.N.Y. Sept. 30, 2015) (dismissing plaintiffs' claims "[t]he complaint d[id] not cite any contractual provisions in the alleged contracts between Ford and its dealerships that indicate[d] plaintiff [was] a third-party beneficiary of those contracts"). Plaintiff has failed to state a third-party beneficiary claim.

### III. Quasi-Contract Claim

Plaintiff alleges that if Defendants assert that there is no contractual relationship between Plaintiff and Defendants, then Defendants are liable to pay Plaintiff the reasonable value of the healthcare services it provided under quasi-contract theories of unjust enrichment and quantum meruit. (Am. Compl. ¶ 68.) In New York, "quantum meruit and unjust enrichment are not

13

separate causes of action," and maybe considered together as a single quasi-contract claim. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). Defendants argue that this claim should be dismissed because, *inter alia*, these claims are duplicative of Plaintiff's breach of contract claim. (Defs.' Mem. at 17-18.) The Court agrees.

It is well settled that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi[-]contract for events arising out of the same subject matter." *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987); *see also City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 (2d Cir. 1988) ("[Q]uasi-contractual . . . relief is unavailable where an express contract covers the subject matter."). That is the case even where either plaintiff or defendant is not a party to the contract. *Viable Mktg. Corp. v. Intermark Commc'ns, Inc.*, No. 09-CV-1500, 2011 WL 3841417, at *3 (E.D.N.Y. Aug. 26, 2011) (an unjust enrichment claim under New York law was precluded by contract even where plaintiff was not party to contract). Consistent with this principle, courts in this circuit applying New York law have concluded that the existence of a valid agreement "governing the subject matter of the plaintiff's claim also bars any quasi-contractual claims against . . . a third party nonsignatory," like Defendants. *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 166 (E.D.N.Y. 2012) (citing *Bellino Schwartz Padob Adver. v. Solaris Mktg. Grp.*, 635 N.Y.S.2d 587, 588 (1st Dep't 1995)).

Here, Plaintiff alleges that Defendants were unjustly enriched by failing to compensate Plaintiff for medical services it provided to patients, either because Defendants rejected the claim altogether or made only a partial payment. (Am. Compl. ¶ 82.) However, "[w]here, as here, the parties do not dispute the existence or enforceability of a contract, quasi-contract claims for

14

unjust enrichment and quantum meruit cannot be pled in the alternative and must be dismissed as duplicative." *Northwell Health, Inc. v. Blue Cross & Blue Shield of Massachusetts, Inc.*, No. 2:23-CV-00977 (NJC)(AYS), 2024 WL 3637964, at *14 (E.D.N.Y. Aug. 2, 2024).

## IV.     Personal Jurisdiction

The Court also agrees with Defendants' contention that this case should be dismissed because the Court lacks personal jurisdiction over them. (Def.'s Mem. at 7.)

A plaintiff has the burden of establishing personal jurisdiction to defeat a Rule 12(b)(2) motion to dismiss. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30, 35 (2d Cir. 2010). "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir.2006). If the forum selection clause is both valid and applicable, "it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." *American S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Am. Boat Co.*, No. 11 Civ. 6804, 2012 WL 527209, at *2 (S.D.N.Y. Feb. 17, 2012).

There is a strong federal policy in favor of the enforcement of forum selection clauses. *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 9–10 (1972); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993). The Second Circuit has articulated a four-part test for deciding a motion to dismiss on the basis of a forum selection clause. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383–84 (2d Cir.2007). *First*, the court must ask whether the clause was reasonably communicated to the party challenging its enforcement. *Id.* at 383. *Second*, the court

15

must determine whether the clause is mandatory or merely permissive. *Id.* *Third*, the court determines whether the claims and parties in the action are subject to the clause. *Id.* at 383. *Fourth*, the court determines whether the party challenging the clause has rebutted the presumption of enforceability by making a "sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383–84 (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)).

In this case, the parties dispute whether Defendants, as non-signatories, consented to the forum selection clause found in the Provider Agreement. *Novak v. Tucows, Inc.*, No. 06 Civ. 1909, 2007 WL 922306, at *13 (E.D.N.Y. Mar. 26, 2007). Of course, "non-signatory status does not, as a general matter, prevent it from being bound by the forum selection clause." *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 154 (E.D.N.Y. 2012). Rather, non-signatories may be bound to a contract's forum selection clause if through an agency relationship, they assumed the obligations of the contract, received a direct benefit from the contract, were incorporated by reference, or through corporate veil-piercing. *Id.*

Plaintiff argues that Defendants should be bound by the forum selection clause in the Provider Agreement due to Defendant's agency relationship with Empire, assumption of the Provider Agreement's obligations, and receipt of a direct benefit from the Provider Agreement. (Pl.'s Opp'n at 16–17.) But, as discussed, the Amended Complaint does not offer any allegations that plausibly support any of these theories to bind Defendants to the Provider Agreement's terms. Because the forum selection clause is one such term, the arguments similarly fail to establish personal jurisdiction.

Plaintiff's contention that Defendants directed its conduct toward New York state within the meaning of New York's long arm statute, CPLR § 302, is equally unavailing. (*See* Pl. Mem. at 18.) CPLR §302(a)(1) authorizes personal jurisdiction "over a non-domiciliary . . . who in person or through an agent, . . . transacts any business within the state[.]" Here, again, Plaintiff has not alleged any facts that, if true, would establish an agency relationship between Empire and Defendants that would allow the Court to conclude that Defendants "transacts any business within the state." CPLR §302(a)(1). And, although "where an insurer located elsewhere contracts to insure a risk within New York State, courts have held that the insurer has contracted to perform a service in New York," *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 179 (E.D.N.Y. 2015), Plaintiff does not allege that Defendants have contracted to insure New York residents. Even if there was such an allegation, the exercise of personal jurisdiction over Defendants based solely on unilateral insurance contracts would not pass muster under the Due Process Clause. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

Nevertheless, Plaintiff relies on *National Union Fire Insurance Company of Pittsburgh, PA. v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352 (S.D.N.Y. 2004), to support its argument that Empire acted as Defendants' agent for jurisdictional purposes. In *National Union*, BP, a foreign corporation, devised an insurance policy for itself, its subsidiaries, affiliates, joint-venture partners, and associated entities involved in oil and gas projects worldwide. *Id.* at 356. BP hired Aon, an insurance broker with offices in London and the United States, to identify insurers willing to participate in the insurance program and to coordinate project declaration and claims

17

processing. *Id.* BP gave Aon information about the projects BP wanted to declare, and employees of Aon then solicited insurers to participate in the insurance program. *Id.* Aon solicited National Union in New York, and all negotiations for the National Union policy were conducted with National Union in New York. *Id.* When BP's foreign subsidiaries moved to dismiss a subsequent lawsuit based on the insurance contract that Aon negotiated with National Union for lack of personal jurisdiction, the court held that it had jurisdiction over those defendants because they "knew and voluntarily authorized BP to acquire insurance for it in relation to the project in which it holds some stake, whether as a participant, partial owner, or both." *Id.* at 360. The Court explained that:

> If $X$ transacts business in New York, then $X$ will be subject to personal jurisdiction on a cause of action arising out of that transaction. If $X$ instead hires $Y$ to transact the same business in New York, and $Y$'s contacts with New York relative to that transaction would suffice to confer on a New York court personal jurisdiction over $Y$, then $X$ will also be subject to personal jurisdiction on a cause of action arising out of that transaction.

*Id.* at 363 (internal citation omitted).

*National Union* is inapposite, however. There, Aon acted as a typical agent—an insurance broker hired to obtain insurance policies and negotiate coverage terms on behalf of its principal and various subsidiaries. The key distinction between *National Union* and this case is that, here, Plaintiff does not allege that BCBSA hired Empire to negotiate contracts on behalf of its members. Instead, Plaintiff alleges that Empire, as Defendants' agent, facilitated Defendants' claim processing, (Am. Compl. ¶¶ 28-29, 31–35, 45), and negotiated the terms of the Provider Agreement that allow Defendants' insureds to benefit from Plaintiff's provider rates, (*id.* ¶¶ 11–17, 20–23, 44, 49–54). What is missing are allegations that Defendants or BCBSA engaged Empire to solicit business in New York on their behalf. Plaintiff has simply failed to plead the

18

requisite facts that Empire acted as Defendant's agent so as to plausibly allege that Defendants "transact[ed] business in New York" under CPLR § 302(a)(1).

Accordingly, Plaintiff has not pleaded sufficient facts to support the Court's exercise of personal jurisdiction over Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
     December 23, 2024

/s/ LDH
L\aSHANN D\eARCY HALL
United States District Judge